

Eastern District of Kentucky
FILED
FEB 1 5 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-88-GWU

FRANCINE EALY,            PLAINTIFF,

VS.        **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,        DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

Ealy

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into

2

Ealy

account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

3

Ealy

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

4

Ealy

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most

5

Ealy

of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

6

Ealy

physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Francine Ealy, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of a seizure disorder, degenerative changes of the lumbar spine, a history of anxiety and depression, and borderline intellectual functioning. (Tr. 18). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mrs. Ealy retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 19-22). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age of 41 years, seventh grade education education, and work experience as a housecleaner could perform any jobs if she were limited to medium level exertion, and also had the following non-exertional impairments. (Tr. 216). She: (1) could occasionally climb, stoop, bend, crouch, and kneel; (2) must avoid hazards; and (3) had a "limited but satisfactory" ability to use judgment, maintain attention and concentration, and handle detailed instructions. (Id.). The VE responded that such a person could return to the plaintiff's past work as a housecleaner, and also identified other jobs that she could perform at the medium level, including "various types of cleaning occupations," "waitress assistant jobs,"

and table busing jobs. (Id.). He also gave the numbers in which these jobs existed in the state and national economies. (Id.).[1]

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

The ALJ noted that the plaintiff had been awarded benefits in an ALJ decision dated July 28, 1993, but was found to have experienced medical improvement after a continuing disability review, and benefits were terminated. (Tr. 13). The plaintiff appealed her termination, but it was upheld in an ALJ decision dated September 22, 2000, and this Court affirmed the ALJ decision on appeal. (Id.). [2] The ALJ in the present case, while noting that the findings of fact made in the September, 2000 administrative decision would be controlling absent a showing a change of circumstances under the holding in <u>Drummond v. Commissioner of Social Security</u>, 126 F. 3rd 837 (6th Cir. 1997), stated that a copy of the prior hearing decision could not be located, other than the introductory page. (Tr. 14). Therefore, she concluded that she would be

---

[1]The ALJ ultimately found that the plaintiff had no past relevant work. (Tr. 19).

[2]In <u>Ealy v.Social Security Administration</u>, London Civil Action No. 01-219-GWU June 7, 2002 (E.D. Ky.), this Court upheld the September 22, 2000 administrative decision and noted that the plaintiff had been limited by the defendant to "light" level exertion, with occasional climbing of stairs and ramps, no climbing of ladders, ropes, or scaffolds, no exposure to heights, moving machinery, or operating motor vehicles, was limited to work activity which might be safely interrupted, and had a "seriously limited but not precluded" ability to deal with the public and understand, remember, and carry out detailed instructions.

8

Ealy

required to rely on the evidence before her in determining the plaintiffs residual functional capacity. (Id.). The plaintiff does not challenge this conclusion on appeal.

Medical evidence submitted with the present application indicated that the plaintiff was treated for complaints of back pain by her family physician, Dr. Madhan Mohan, and was referred to a neurosurgeon, Dr. William Brooks for evaluation, but a CT scan and MRI of the lumbar spine showed disc disease without spinal stenosis or herniations, and Dr. Brooks concluded that the plaintiff was not a candidate for surgery. (Tr. 113-14, 116, 123). No functional restrictions were given. Dr. Mohan also treated the plaintiff for a seizure disorder, for which he prescribed Dilantin, noting after an examination for an alleged seizure in November, 2002 that her seizures were usually associated with sub-therapeutic levels of Dilantin. (Tr. 184). However, on this occasion, the Dilantin level was therapeutic, and the physician prescribed Neurontin. However, the plaintiff stated that she could not afford this medication. In August, 2003, the plaintiff was seen after having episodes of uneasiness, shortness of breath, and confusion, but Dr. Mohan felt that these episodes had previously been related to a high level of Dilantin, and indeed, her Dilantin level was excessive. (Tr. 179). The physician suggested a reduced dose, and the addition of Tegretol. (Id.). In an October, 2003, office visit, no mention was made seizures, with the main complaint being of abdominal pain. (Tr. 178). The plaintiff had previously been evaluated for pelvic pain (e.g. 117, 119), and irritable bowel syndrome as well as gastritis had been diagnosed by Dr. Raju Vora (Tr. 171, 174), but once again no functional restrictions are suggested.

9

Ealy

Dr. Mohan also prescribed Zoloft and Xanax for "anxiety neurosis," (Tr. 117, 178), but the plaintiff had no formal psychiatric evaluation or treatment, according to her statements to Mr. Phil Pack, who conducted psychological testing in February, 2003 (Tr. 130-1). The plaintiff also stated that her seizures were controlled to some extent with Dilantin. (Tr. 130). Educationally, she had attended school until the eighth grade, and had received poor grades but was in regular classes. (Id.). Mr. Pack administered IQ testing, which showed a verbal IQ of 76, a performance IQ of 74, and a full-scale IQ of 73, along with a sixth grade reading ability. (Tr. 132-3). She gave good effort on all tasks, and validity scores were high. (Id.). Mr. Pack diagnosed an anxiety disorder and a depressive disorder "by history," and borderline intellectual functioning. (Tr. 133).

All functional limitations in connection with the present application were given by non-examining reviewers. The most recent physical reviewer, Dr. Robert Brown, concluded that the plaintiff could perform medium work, could never climb ladders, ropes, or scaffolds, could occasionally climb ramps and stairs and balance, and needed to avoid all exposure to hazards. (Tr. 157-65). While this is slightly different from the ALJ's functional capacity assessment, the plaintiff has not challenged the discrepancies on appeal.

A psychological reviewer, Dr. Ilze Sillers, concluded that the plaintiff had a "moderately limited" ability to understand, remember, and carry out detailed instructions. (Tr. 135-7). She concluded that the plaintiff was able to understand, remember, carry out, and sustain simple tasks, adapt to routine changes, and relate in an adequate

10

Ealy

manner. (Tr. 137). The ALJ's psychological restrictions appear to have been drawn from Dr. Sillers. The plaintiff's arguments focus on her educational level, and borderline intellectual functioning, however.

Specifically, the plaintiff does allege that her ability to read, which was tested at the sixth grade level, falls lower than her formal seventh grade education, and that her "basic ability to learn" falls at or below the lowest five percent of the national population, and that this ability would be inconsistent with the jobs described by the VE, who was not provided with this information.

She cites information given in the <u>Dictionary of Occupational Titles</u> (DOT) regarding the specific vocational preparation (SVP) of one job, kitchen helper, DOT 318.687-010, with an SVP of 2, which the plaintiff argues requires a "basic ability to learn that is at least above the lowest 10 percent of the population," and that the plaintiff's IQ scores show that she is in the lowest five percent of the national population, citing statistics from articles published in psychological textbooks. However, as a preliminary matter, the Court notes that the VE did not specifically identify the job of "kitchen helper," and the jobs he did identify do not seem to have precise equivalents in the DOT, although the job of "dining room attendant," DOT 311.677-018, is given the alternate title of "bus person," and also requires an SVP of 2. The DOT defines an SVP of 2 as requiring "anything beyond short demonstration up to and including one month," however, which is the same as the job title identified by the plaintiff in her brief. In any event, no matter how the plaintiff's IQ falls in the national population, Dr. Sillers did make

11

Ealy

the uncontradicted conclusion that she was capable of understanding, remembering, carry out, and sustaining simple tasks. (Tr. 137). The ALJ also noted that her activities of daily living included performing household chores, preparing meals, shopping, and attending church (Tr. 19), and the plaintiff testified that she had a driver's license until it was taken away because of her seizure problems (Tr. 208). A reasonable fact finder could have concluded that this was sufficient evidence to support the VE's testimony that she was capable of performing unskilled jobs.

While the plaintiff's measured reading level of sixth grade was slightly lower than the seventh grade education presumed in the hypothetical question, in the present case this would be, at most, harmless error. The job of dining room attendant/bus person requires only "Level 1" reading per the DOT, and no useful purpose would be served for a remand to obtain a corrected hypothetical question.

The decision will be affirmed.

This the __15__ day of February, 2006.

G. WIX UNTHANK,
Senior Judge

12